The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Be seated everybody. Our third case is 24-4029 and 4030 United States v. Benton. Ms. Hester. Good morning. Good morning. May it please the Court. The law in this circuit is clear that district courts are required to address the central thesis of a defendant's non-frivolous argument supporting a lower sentence. The record here shows that didn't happen at Cedric Benton's sentencing on new fraud charges or at his revocation sentencing. The district court imposed a sentence on the fraud counts that doubled the high end of the guideline range and was 18 months longer than even the government requested. And it did that without addressing two of Benton's central mitigating theses. The government concedes one of Benton's central theses in mitigation was that he was a low-level participant in the conspiracy. Benton offered a number of supporting points for that thesis, including that the person who lured him into this scheme was Danielle Jackson. Other participants did everything for him. He wouldn't have known how to fill out the loan application forms without help. Others obtained more money from the scheme than he did. And he participated only twice while other people kept the scheme going for months after his involvement. The court didn't address Benton's central thesis about his role in the offense or any of these points. It merely said Benton was only one player in a multi-conspiracy crime. But that comment applies to everyone involved in the offense. And it doesn't address Benton's central thesis that he had a limited role in the offense compared to the other people who participated in it. In fact, if anything the court's statement reflects, it didn't fully hear Benton's argument about his limited role in the offense. The court also didn't address Benton's separate argument that he wants to support his young child and he's able to do so. The court never even mentioned that Benton is a father. And the government doesn't contend otherwise. Instead, the government takes the position the court didn't have to consider this mitigating argument because Benton didn't explicitly connect it to a 3553A factor. That position is baseless. This court has never required defendants to explicitly connect their mitigating arguments to 3553A factors. And it's obvious from the context that this argument relates to the history and the characteristics of the defendant. This court's only requirements for mitigating arguments is that they be non-frivolous reasons for a sentence that is lower than what he received. The government also bears the burden of showing that... On the child issue, what evidence does Benton present below that he was supporting the child? I think you may have said it was kind of on an as-needed basis that he lived with the child's mother. But beyond that, there's no evidence. Like in these other cases that we look at where there's this support of the family. Well, I think there's as much evidence here as there was, for instance, in Lewis or in Patterson. In Lewis, in particular, the district court had refused to consider the two letters that Lewis had submitted in support of his assertion that he was a hard-working family man. Yet, this court still vacated and remanded because the court didn't actually address his assertion that he was a hard-working family man. I believe that Patterson is similar in that the defendant asserted that he was a father and was supporting his family. But there wasn't a whole lot of exposition about that. I think in Lewis, there were letters from different family members. There was evidence that he had been working for two years. I think that's how the court came to the conclusion that this sent it back because the court did not consider anything there. But this is just basically, and it seems like in Patterson that he's saying, I've been living with my child's mother, and I started working six months ago, and I help out. Right. I mean, I think that that information was in the PSR. And, I mean, he didn't just say it in Patterson. He did say, you know, that Mr. Benton has had a child. The child is 17 months old. He would like to be able to support that child, and he's able to do that. And I think that that is enough because it explicitly connects it. I mean, it doesn't explicitly connect it, but it is obviously connected to his history and characteristics. And this court has repeatedly recognized that being a working parent of a child is a non-frivolous mitigating argument. Of course, it's not one that the court has to accept, but it's one that the court has to respond to, and that didn't happen here. So, can I ask you about that issue in the context of harm or harmlessness? So, we've got cases that say that when an appellate court is satisfied that arguments are particularly weak, that we might be able to affirm on harmlessness grounds, even in the face of a procedural error. And I suppose your argument is that at least some of these arguments aren't necessarily weak. The district court seemed laser-focused, though, on three issues, as best I can tell. One was that the defendant's criminal history was grossly underrepresented. Two, that he committed these fraud offenses so quickly after being released from prison. And third, that he falsified at least one, maybe a number of urinalysis drug tests. And so, I guess the problem I'm having is if we send this case back, well, let me phrase it this way, and I think you can see to this point, if the district court had considered all of the mitigating arguments that you've laid out should have been considered and nevertheless arrived at the sentence in this case, would you have an argument on appeal? I don't think so, but that's also not the standard for harmless error. It is the government's burden to demonstrate harmless error, and in fact, this court has recently explained in the United States v. Shields case why that's so difficult, especially when a sentence is this high. You know, it's just double the top of the guideline range. There's a lot of room for the court to give a pretty severe sentence that is not as high as what it gave. And in that case, the court explains, and Shields liked, the question is whether it's possible that the defendant's argument would have moved the needle somewhat. And even if it was just a month or two off, that prevents the government from demonstrating that the error is harmless in this case. And it really can't do that. In fact, you know, you notice the government only cites one case in support of their harmless error argument, and that's Boulware, and that's really an outlier in this court's jurisprudence on this issue. You know, the court has decided dozens of these cases at this point, and Boulware is really the only one that the government can pull out in support of their harmless error argument. And that one's kind of an interesting case because in that case, the government had conceded procedural error, and it appeared that the panel really didn't agree with them that the procedural error had occurred in the first place because they point out in the harmless error discussion that actually the court did address all these things when you look at the record of the whole. So in the context of the arguments that you say should have been, the district court should have focused on, you concede that in isolation, one or more of them, it may have been weak, but collectively perhaps, the argument is that there's at least a, you know, it presents at least a fairly strong case in mitigation when you consider them collectively? I actually don't concede that either one of them is weak. Well, there are others, right? So you talked about the supporting his child, but didn't he also, well, I thought you were arguing that his father had passed away while he was in prison, and his mother was seriously ill and might be suffering from dementia, and he wanted to spend time with her. Are you conceding that those are? No, I actually think you're conflating. So there were two separate things that happened here. First, there was the sentencing on the fraud. Right. And then there was the sentencing on the supervised release. So the urinalysis stuff didn't come up in the fraud when they were talking about the fraud. All of that related to the supervised release. So with respect to the fraud, he made three arguments in mitigation. You know, one was sentencing disparity with Danielle Jackson, which the court actually, we concede, did consider that, and we didn't raise that on the appeal. But then there were these other two arguments. One was that his limited role in the offense, and the other one was his desire and ability to support his child. And those two the court didn't consider in the context of the fraud sentence, and that's really what drove this extra high sentence was the court's doubling the guideline range for the fraud sentence. Well, I guess my question to you is in the context of those two mitigators, do you just consider those in isolation, or do you consider those in the context of what the district court thought was important as to what drove the sentence? Are you talking about in the harmless error context? Yeah. Yes, I think in the harmless error context you look at that as a whole, but I also think it's impossible to say, you know, based on these arguments that wouldn't have caused the court to go down. Even a couple of months is enough, or a month, or a day. You know, that's enough to prevent the government from establishing that this error was harmless. I just don't think they can do it in the typical case where this type of error occurs, or in this case. And I think that Shields really does a good job of describing why that's the situation. So do you think that bulware is just bad law? We don't consider whether or not a particular argument is weak, and if we do consider it, how do we gauge that? I don't think bulware is no longer good law. I just think that it's an unusual situation where the government conceded procedural error in that case, and the panel seemed to not really agree with them. It just assumed that there was error, but then it went on to say, actually the court considered all these factors, and the argument was weak as well. And I just don't think that that's the situation that we have here where the court didn't even consider the argument. So we can't really know whether any of these arguments would have moved the court downward, even by a small amount, had the court explicitly taken them into account. I would like to talk about the revocation sentence, because that one is also plainly procedurally unreasonable for the same reason. Well, that's an even tougher burden, right? I think the plain part of it is not that high of a burden in this case, because this court has made it so abundantly clear that in the revocation context, district courts are required to address a defendant's non-frivolous mitigating arguments just like they are on the front end. And when arguing for a lower revocation sentence, Benton did make three non-frivolous mitigating arguments that the court didn't address at all. Benton re-raised this sentencing disparity argument in relation to Danielle Jackson at the revocation part of the proceedings, and he did so because the court's main reason for rejecting that on the front end was because Benton's criminal history level had gone down, but in revocation, his criminal history category was six. And the court never really acknowledged his argument that its reasons for rejecting that disparity argument previously didn't apply here. The court also didn't address Benton's argument that he had a drug problem that he needed treatment for, and that argument was particularly relevant in this case. I thought he did. Well, maybe he didn't address it, but he recommended that he attend drug treatment as a part of his sentence. Wouldn't that be recognizing the argument? Prespositioning? I agree that in some circumstances it would, but actually the court did that with respect to the fraud sentence before Benton had ever made this argument, and I don't think it's possible to consider an argument that hasn't even been made yet. And in particular, that argument was relevant in revocation because he violated supervised release by falsifying urine tests after he had several dirty tests, and probation didn't even offer him drug treatment, even though he had a supervised release condition that allowed that. So I think that that made that characteristic particularly relevant in the revocation context, and the court didn't consider it in that context. We have gone maybe not as clear as times in terms of how much a judge needs to address a non-frivolous argument. At one point it seems like it was pretty hard, hard set, and then we kind of backed off a bit from it. But ultimately here the district court, the abuse of discretion standards here, is very clear from this record. The district court is focusing on the seriousness of the offense, but she ultimately concludes outweighs the role that the defendant played in this, which, you know, is interesting. But, you know, what's interesting to me in this case, and you tell me why this is not, maybe you can't do it. This defendant spent 10, almost 10 years in jail that he should not have spent. That's correct. And he gets out and he makes an application for this relief, and it's a fraudulent situation. The judge is focused on the seriousness of it and the past history and all. I don't understand why in that context the argument from the defense would be, yes, Your Honor, it could be, but keep in mind, this is an individual who spent 10 years in jail that he should not have spent in there. That would be the factor I would think you really would want, or at least the consideration you want the court at least to have that in its head, because this is not just a blank slate individual who's been out here committing crimes. You can talk about all the crimes if you want, but he spent 10 years in jail that he should not have spent in there. How does that factor into this? I mean, I haven't heard you mention it at all, and I got it because of the nature of these. These are non-frivolous arguments you're bringing up. But it seems to me in the conclusion of it, to say the seriousness of it outweighs the role, how do you consider the seriousness without looking at the individual himself? This is a man who spent 10 years in prison he should not have spent. That doesn't seem to factor in on an apportable level from my perspective. Well, Your Honor, I find that frustrating as well, particularly because I represented Mr. Benton previously in the Simmons litigation, but I think overall when you look at the whole record here, and that's what you have to do, the court looked at only the negative things about Mr. Benton and none of the positive things about Mr. Benton. It's almost like he kind of took it against him, like, you should know better. You spent time in jail. You got out and you did the same stuff. You went out and meet him, which is understandable. Someone who's been in prison, get out. The whole aspect of being rehabilitated or deterrent doesn't seem to be working too well. You understood the seriousness of it. You did this and claimed you had a business while you were in prison, and you're taking money from people who otherwise should be entitled to it. I mean, it was clear the judge was not happy about that, and I'm not sure what happens even if you prevail. Judge Diaz's question, even if you prevail, the focus of this conclusion is still what it is. He could go back and say, oh, yes, I considered this and considered every fact that you just said, but I conclude that the seriousness of this offense outranged the role, in this case, of the family circumstances. And as you just, I think you, I wouldn't say conceded, but you said it, you said if he had done those things, you wouldn't be here. So that's going to take about, what, 10 minutes? Can I respond, Your Honor? I have well run out of time at this point. Well, I think that this court has said time and again that the court can't say that the district court's explicit consideration of these factors that it never put on the record that it considered, the court can't say that it wouldn't make a difference, even if it's just by a small amount. I mean, that's the first thing. And the second thing is that the judge who did the sentencing has retired from the bench now, so it will obviously go back to somebody different if it's sent back. And so I think in conclusion, I would say that the court should vacate the fraud and the replication sentences and remand it to the district court for the resentencing. So we now add a retirement exception to the harmless error analysis? Is that the way it works? I don't think so. I think you look at the time of the, you know, when the proceeding took place. But I just think under Shields, the government cannot satisfy its burden to show that this is harmless. Okay, thank you. Ms. Wood? Good morning, and may it please the court. Julia Wood on behalf of the United States. Cedric Benton's fraud and revocation sentences are procedurally reasonable. The district court explained its chosen sentence, considered the advisory policy statement range, and considered all of Benton's non-frivolous mitigating arguments for a lower sentence. Even if the district court erred by not saying more, any error would be harmless because this court can say with fair assurance that more explicit consideration of any of those arguments would not have affected either of his sentences, which were driven, as this court has mentioned, by the court's concern with Benton's criminal history, the seriousness of his offense, and on the revocation, his contempt for the court's supervised release order. What, in your mind, is necessary for a court to explicitly consider a defendant's mitigation arguments? You just said this district court did, but you clearly didn't identify them explicitly. So what in the record shows that it considered them? Well, I think it depends on what exactly the defendant says. On the issue of Mr. Benton having a son, he simply stated that fact, that he had a son, that he wanted to support. That's no more information than is in the PSR, and the district court expressly said that it had adopted the PSR, that it listened to the arguments of counsel, but it clearly found that that fact did not weigh... did not provide a basis to enter a lower sentence. As far as the argument that he played a minor role in the offense, we don't concede that that's necessarily separate from the arguments that he made on the disparity. The district court, the context of the sentencing hearing makes clear that the district court did consider his culpability in relation to his other co-conspirators, Mr. Jackson, Ms. Harris, Ms. White. There was information in the PSR about the details of the offenses the district court had considered, the disparity argument with respect to Mr. Jackson, and the defense... Mr. Benton's counsel concedes that he adequately addressed that disparity argument. And the district court noted that although Benton's offense only happened twice, and he was only indicted for two counts, whereas some of the other co-conspirators were indicted on 12 counts. So can I ask you about this disparity point? The district court acknowledged that Mr. Benton was only one player in the multi-conspiracy crime. That's not quite the same as acknowledging that he was a low-level player in the same crime, because he could have been the kingpin and been one player in the crime. So those are two different arguments, don't you think? They're slightly different. I will say that they're not exactly the same. But this court's precedent requires that the district court address the central thesis of the defendant's argument and not all the supporting data points. And I would say that these are kind of separate data points that support the general argument that he was less culpable than other defendants in the conspiracy. And I think the district court saying, you know, this is still a pretty heinous crime, that he committed it, he lied about working while he was actually incarcerated, that these kind of... these factors outweighed the fact that he perhaps had only submitted two... two applications or that someone helped him with those applications. How do we gauge whether a particular argument is weak or not? That seems like a pretty subjective, qualitative, you know, determination best left to the district court. So we've got... I mean, you've rebutted the argument about his being a father, but with respect to his being a low-level offender in this context, how do we know that that wouldn't move a district court to say that it had... Well, I'm assuming that they didn't consider it. You argue otherwise. You say that it did. But let's assume that it didn't. Then what? I think that this court can easily find harmless error in this case. I do recognize that, as in Shields, it is a pretty high bar to show harmless error in these cases, but I think we can show it here. And that's because the district court said very clearly it had a specific reasoned basis for its variance. It varied upward to a criminal history category of six to capture the... to remedy what it saw as the underrepresented criminal history, and then it imposed the sentence that was within that guidelines range. And the court actually said that it didn't think that even 32 months was adequate to protect from the kind of criminal recidivism that Mr. Benton had showed, but that it had a logical basis for imposing that sentence. And I think when you have a district court saying, look, I don't even know if this sentence is high enough, you can infer that the district court would not... that even if the court should have said more about the arguments or, you know, further considered them, that it would not... those arguments would not have moved the needle in this case. Even in sentencing disparity arguments? At the revocation? On the... On the revocation. Turning to the revocation, I think that the... we could show harmless error there as well, because even though the district court said less, and it was required to say less because this was a revocation proceeding, the district court... it's clear from the context of the entire hearing that it was very concerned about Mr. Benton's disrespect for the law. He not only committed the fraud, but he also falsified the drug tests, and the district court said that its sentence, which was within the guidelines range, so it's presumed reasonable, that its sentence was required to meet that breach of trust and the utter contempt for the district court's order. So I think that even on the revocation, that any failure to explain any further would be harmless. Can you respond to Judge Nguyen's point that he made at the end of Ms. Hester's argument about the notion that the defendant, because of the First Step Act, spent 10 years in prison that he should not have, and that that is somehow mitigating that? Well, first of all, I guess it wasn't made. That argument wasn't made below, but is that a relevant consideration in your mind? I understand the court's concern, but I don't think that is a relevant consideration. The defendant didn't raise that, and I think the district court was viewing it differently. It was clearly seeing that Mr. Benton had been given a second chance, and before, I think he was actually planning the offense while he was still in prison, and I think the district court was focused on the kind of squandering of that second chance, the continued criminal recidivism, and wasn't focused on the fact that he had over-served his sentence, because the defendant didn't raise it. Let me just make sure that I've covered everything. As far as the policy statement range, I just did want to mention that that was in the revocation petition. It was mentioned by the prosecutor and defense counsel kind of referenced that it was three times the range on the fraud sentence, so I think everyone was aware during this hearing what the two kind of ranges were, so there's no error there. Well, the district court looked at his criminal history quite a bit, and it was 16 years he was in prison, but it didn't seem considered that maybe, as though he was in, for 16 years, he did nothing to reduce his criminal record, but he's not considering the fact that you're in prison, there is an element of rehabilitation that occurs in prison. I mean, why is that not something, because ultimately, it seems to me, on the one hand, we're looking at the non-criminal side of this. We've had cases that have been pretty strong on that. We don't get into this conclusion business. You didn't consider these non-criminal side of it. Go back and consider them, and here we're focusing on the conclusion, which is abuse of discretion standard that deals with the issue of the judge sees the seriousness of the offense, and there's something here. This judge is very pointed on this particular defendant in terms of giving him this sentence, sort of, you know, I know you, sort of attitude here, and I don't care what your role was or what the other faculty, it is, I mean, in that context, how do we deal with this case? Do we send it back for the judge at least to make it clear that the non-criminal side of it were in fact considered in this process, because quite frankly, it looks like it didn't matter. Do we send it back because of the serious nature of the offense from the judge's perspective? I don't, I think there's enough in the record that this court does not need to send it back because the district court did grapple with Benton's culpability and, you know, was aware that he had a son, so I don't think the court needs to send it back here, and I think the court was... Well, we have sent cases back because pretty simple reasons. We didn't discuss the non-criminal side of it. We've sent those back. I think there's a difference between being able to tell whether the court addressed... But granted, it has not been uniformed. Right, and these cases are so factually specific, and that's why I keep kind of coming back to in this case, I don't think we need to send it back because we can tell that the district court considered them. It may not have, you know, with the fact that he had a son, it may not have explicitly addressed it on the record, but the context of the hearing, adopting the PSR, hearing the arguments of counsel shows that he considered it, and this court's precedent says that he needs to... We need to have enough... Excuse me. The problem is, in this you say, Dutch, you should consider the non-criminal side of it, and then you get into the whole business of, well, you can kind of tell he did, the record looked like he did, and really the intent at the beginning seems to have been pretty simple, just say you addressed these arguments, and you listen to the arguments of the defendant, and says, I've considered your arguments, and this, and this, this, this, and it's done. And yet, we keep seeing cases come up here, just like this, where a defendant comes up and says, I made this argument, it's non-criminalist, the whole bit, but the judge didn't consider it. And, of course, the counter-argument is, well, you know, the judge looked at it, he was in the courtroom, he heard all of it, we all knew what was going on, et cetera. So, I mean, what point do we really make it clear that you really need to address non-frivolous arguments? Well, and I think that also, it matters what the defendant says, so that the court can identify what are the non-frivolous mitigating arguments. As far as the son, he mentioned he had a son, that information is in the PSR, many defendants have children they would like to support, so it can sometimes be difficult for the court to tick off which arguments a defendant is making, and that's why. It seems like this ought to be fixable real easy. I heard Ms. Heston say, if the court had ticked those things off, we wouldn't be here. What? I mean, couldn't we just say a defense counsel needs to just list those things, and if the judge fails to consider anything unless, to make an objection, of course, any judge who's going to hear that, says, well, let me consider it, and that'll be the end of that. I mean, how can we, this seems like an issue that ought not be coming to us. I agree, Your Honor. I wish it were simpler, and I think it would make all of our jobs easier if we had some kind of procedure for identifying. You could make it simpler for us, even from a government side. You could say, well, Your Honor, he's made these arguments here, and this could come up on appeal. There's a bunch of things. Judge, did you consider this? If you had done that, do you think we'd be here? I mean, all you'd be doing is just saying what he said. You'd say, Judge, I want to be clear. He's argued this, he's argued this. Did you consider all of those things, Your Honor? And he's probably going to say, yes, I did, which means you're not going to be standing before us again. Yes, and you know, as we continue to advise our colleagues at the trial level, that is something that I think we could all consider and have talked about, how we can make this clear and make it easier for the courts so that they don't have to do this combing through the record, which, you know, your precedent has said they don't have to do, but it would be easier if we, you know, had a list of arguments to respond to. Sounds like you're going to fix it in the Western District. We certainly will. We'll try. All right. If this court has no further questions. Thank you, Ms. Wood. All right, thank you. We would ask that you affirm.  The government says that it's clear from the record that the court considered all these arguments, but we can't tell whether the court considered them if the court doesn't put anything on the record to indicate that he did, and that just didn't happen here. In this particular context, the court has an elevated obligation to respond to arguments if it's going to double the guideline range and impose a sentence that's a year and a half longer than what the government even requests. I mean, this court's decisions, and the Supreme Court even, I believe it's in Gallerita where they talk about, like, how much of an explanation is required depends on the circumstances of the case, and going above the guidelines requires a greater explanation than sentencing somebody within the guidelines, and that certainly applies here. The disparity argument is not the same as role in the offense. Disparity has its own 3553A factor. It's a very particular consideration that the court is required to engage in. The role in the offense is different. That goes to the history and characteristics of the defendant. And also, talking about the disparity with this one other participant doesn't consider the culpability of Mr. Benton relative to all of the other participants in the offense, and that's what the central thesis of Benton's mitigating argument was, as the government has not disputed in the briefing. As far as the harmless error issue, I think it's important to note, I mean, it's clear that the judge was motivated by his concern about protecting the public, but also the arguments that it overlooked go directly to that concern. His relative culpability in the offense goes to his recidivism risk, and as well, his desire to support his son by working lawful employment, that too goes to his motivation to avoid reoffending in the future, so I think that it's important to take that into account. And my final point, Judge Wynn, you know, you asked, how can we fix this? There's really an easy solution, and that's for the judge just to ask the defendant, did I overlook any of your mitigating arguments? Well, I was trying to make it easy on that. If I come to the defense counsel, I can't say, well, Your Honor, I got five non-figure frivolous arguments here, I want you to address each one of them. Government, even after you say it, says, Your Honor, did you address those five? And I mean, it sounds oversimplistic, but at the same time, it gets rid of a case coming up here to then send it back to say, consider the non-frivolous arguments, when looking at the record as a whole, the conclusion of this judge, and you're tired or not, is that this is a serious thing, and notwithstanding the role of the defendant, and I think notwithstanding the family circumstances, this is a sentence I would impose. Well, I think what we're getting at is that everybody involved can make this a lot easier for all of us, just by being more clear, so I agree with Your Honor on that, and if the court has no further questions, I'll sit down. All right, thank you. Thank you very much, Ms. Hester. I want to thank you and Ms. Wood for your fine arguments. It's still morning, I guess. We'll come down and greet you, and then move on to our final case.
judges: Albert Diaz, James Andrew Wynn, DeAndrea Gist Benjamin